USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 94-1285 UNITED STATES OF AMERICA, Appellee, v. EDDIE CORDERO, a/k/a EDDIE CORDERO GARCIA, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ _________________________ Selya, Circuit Judge,  _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Thornton E. Lallier, by appointment of the court, for _____________________ appellant. Geoffrey E. Hobart, Assistant United States Attorney, with ___________________ whom Donald K. Stern, United States Attorney, was on brief, for _______________ appellee. _________________________ December 27, 1994 _________________________ SELYA, Circuit Judge. Defendant-appellant Eddie SELYA, Circuit Judge. ______________ Cordero, also known as Eddie Cordero Garcia, takes issue with the district court's denial of his motion to suppress certain evidence, as well as the court's determination that he should be sentenced as a career offender. Concluding, as we do, that appellant's legal arguments are unfounded, we affirm his conviction and sentence. I I In February 1993, a federal grand jury indicted appellant on charges of possessing cocaine with intent to distribute and conspiring to commit the substantive offense. See ___ 21 U.S.C. 841(a)(1), 846. Appellant promptly moved to suppress certain evidence undergirding the indictment, arguing that the evidence stemmed from an illegal airport stop involving a codefendant, Juan Cubero Reyes (Cubero). In June, the district court denied the motion. Appellant and his counsel then negotiated a written plea agreement with the government. The agreement did not expressly reserve any right of appeal with respect to the antecedent suppression ruling. On August 30, 1993, pursuant to the agreement, appellant pled guilty to both counts of the indictment. Approximately six months later, the district court pronounced sentence. Among other things, the court invoked the career offender guidelines, U.S.S.G. 4B1.1-4B1.2 (Nov. 1993), and imposed a 188-month incarcerative term. This appeal 2 followed. II II Appellant's first assignment of error need not occupy us for long. He asseverates that the most damning evidence against him was, by and large, the spoiled fruit of a poisonous tree, see, e.g., Wong Sun v. United States, 371 U.S. 471, 484-85 ___ ____ ________ _____________ (1963), and that, therefore, it should have been suppressed. We do not reach the merits of this assertion, as appellant failed to preserve it for review. A A In this case, appellant entered an unconditional plea of guilty to the counts of conviction.1 Such a plea marks the end of one chapter in the progress of a defendant's case, and, simultaneously, begins a new chapter. Thus, an unconditional guilty plea insulates virtually all earlier rulings in the case from appellate review. See Tollett v. Henderson, 411 U.S. 258, ___ _______ _________ 267 (1973). As the Supreme Court explained: When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Id. ___  ____________________ 1The Criminal Rules do provide an avenue through which a defendant can enter a conditional guilty plea, preserving certain ___________ antecedent rulings for appellate review. See Fed. R. Crim. P. ___ 11(a)(2). Cordero, however, did not take this route, but, instead, chose to enter an unconditional guilty plea. _____________ 3 We have assiduously followed the letter and spirit of Tollett, holding with monotonous regularity that an unconditional _______ guilty plea effectuates a waiver of any and all independent non- jurisdictional lapses that may have marred the case's progress up to that point, thereby absolving any errors in the trial court's antecedent rulings (other than errors that implicate the court's jurisdiction). See, e.g., Acevedo-Ramos v. United States, 961 ___ ____ _____________ ______________ F.2d 305, 308 (1st Cir.), cert. denied, 113 S. Ct. 299 (1992); _____ ______ Valencia v. United States, 923 F.2d 917, 920 (1st Cir. 1991); ________ ______________ United States v. Wright, 873 F.2d 437, 442 (1st Cir. 1989). The _____________ ______ question in this case, then, is whether Tollett applies. _______ B B Appellant strives to bring his case within the single recognized exception to Tollett, theorizing that the lower _______ court's suppression ruling was jurisdictional in nature because quashing the evidence would, in appellant's words, "have deprived the Government of virtually all evidence against Eddie Cordero Garcia," and, therefore, would have precluded a successful prosecution. However, appellant casts too wide a net: reading the "jurisdictional defect" exception in so unrestrained a fashion would create a sinkhole capable of swallowing the rule. For purposes of the Tollett exception, a jurisdictional defect is _______ one that calls into doubt a court's power to entertain a matter, not one that merely calls into doubt the sufficiency or quantum of proof relating to guilt. Cf. Menna v. New York, 423 U.S. 61, ___ _____ _________ 62 n.2 (1975) (holding that defendant, by pleading guilty, did 4 not waive a double jeopardy claim because, were the claim well founded, the government could "not convict petitioner no matter how validly his factual guilt [might be] established"). Here, the suppression ruling, even if erroneous,2 cannot be termed "jurisdictional" in any meaningful sense of the word. After all, suppression of the evidence would not have deprived the district court of power to entertain the case against appellant; it would simply have made the prosecution's task more difficult by making a conviction less likely. Consequently, appellant's initial assignment of error falters.3 III III  ____________________ 2We do not in any way suggest that error inheres. Indeed, were we to reach the suppression issue, it seems unlikely that appellant could prevail. His brief argues, essentially, that the government learned of the evidence in question by violating Cubero's Fourth Amendment rights. Even if that is so and the record before us certainly does not bear out the claim a defendant cannot succeed in suppressing evidence on Fourth Amendment grounds unless he can show that his own rights, rather than a third party's, have been abridged. See United States v. ___ ______________ McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990); United States v. ________ ______________ Soule, 908 F.2d 1032, 1036-37 (1st Cir. 1990); cf. United States _____ ___ _____________ v. Santana, 6 F.3d 1, 8-9 (1st Cir. 1993) (suggesting that a due _______ process defense based on outrageous government misconduct is not available if the misconduct only harmed third parties, but not the defendant). 3Appellant also makes a feeble attempt to loosen the grip of the Tollett doctrine by arguing that constitutional rights cannot _______ be waived except through their "intentional relinquishment or abandonment." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). But _______ ______ he is hoist with his own petard. At the change-of-plea hearing, the district court informed appellant that, by pleading guilty, he would surrender any right to contest his guilt on this, or other, grounds. Forewarned, appellant nonetheless changed his plea. Thus, to the extent (if at all) that Zerbst applies, it ______ does not profit Cordero. 5 Appellant's remaining assignment of error is no more robust. It relates to the district court's decision to classify appellant as a career offender for purposes of applying the federal sentencing guidelines. On this issue, waiver is not a problem: since a defendant's unconditional guilty plea does not automatically waive the right to appeal matters incident to sentencing as opposed to guilt, see 18 U.S.C. 3742, this issue ___ is properly before us.4 The more fundamental problem is that appellant's claim lacks merit. A A In general, the career offender provisions apply to an adult offender who commits a felony "that is either a crime of violence or a controlled substance offense," having previously experienced two or more convictions for targeted predicate offenses, that is, "prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. 4B1.1 (Nov. 1993); see also United States v. Piper, 35 F.3d 611, 613 ___ ____ ______________ _____ n.1 (1st Cir. 1994), petition for cert. filed (Nov. 14, 1994) _________________________ (No. 94-6876); United States v. Fiore, 983 F.2d 1, 2 (1st Cir. _____________ _____ 1992), cert. denied, 113 S. Ct. 1830 (1993). _____ ______ The district court determined that Cordero came within the encincture of the career offender guidelines. To test this determination, we must first put it into perspective.  ____________________ 4Of course, we recognize that some courts have enforced plea agreements in which defendants agreed to waive the right to appeal their sentences. See, e.g., United States v. Wiggins, 905 ___ ____ _____________ _______ F.2d 51 (4th Cir. 1990). Appellant's plea agreement contained no such proviso. 6 In preparing the presentence investigation report (PSI Report), the probation officer concluded that the career offender provisions applied. The PSI Report premised the predicate offense component of this conclusion on two convictions for aggravated assault recorded in San Juan Superior Court, one culminating in the imposition of a sentence on April 10, 1987, and the second culminating in the imposition of a sentence on October 7, 1987. Appellant does not seriously contest the suitability of the later conviction for use as a predicate offense in the career offender calculus. Instead, he concentrates his fire on the inclusion of the earlier conviction. The district court gave appellant ample time to obtain relevant records and marshal his arguments. When he originally requested a delay in sentencing, the district court ordered a postponement of roughly eight weeks in duration. When, thereafter, appellant sought still more time, the district court again obliged, granting a further seven-week continuance. Due in part to these extensions, the district court had before it at the disposition hearing, held on February 28, 1994, the following information in regard to the disputed conviction: 1. A barebones statement in the PSI Report to the effect that Cordero was arraigned on a charge of aggravated assault on December 11, 1986; that he pled guilty to this charge on January 23, 1987; and that the court sentenced him on April 10, 1987. 2. A certified copy of the charging document anent this conviction. This document memorialized a complaint by the local district attorney against Cordero "for the crime of aggravated assault, a felony." The 7 document recounted that the offense occurred "in or about the 11th of October of 1986, in Rio Piedras, Puerto Rico", when Cordero "illegally, voluntarily, . . . maliciously, knowingly, and with criminal intent, caused serious bodily harm to Mr. Jesus Cortes Molina, by means of force and violence, attacking him with a wooden pool stick, hitting him in the right arm causing a fracture of the same. . . ." 3. A certified copy of a document entitled "Sentencia," which described the sentencing proceedings that took place on April 10, 1987. This document indicated, inter alia, _____ ____ that Cordero was "assisted by his attorney, Jose M. Ortiz-Miller," during the sentencing proceedings.5 Based on this information, the district court ruled, over objection, that the government had proved by a preponderance of the evidence that the disputed conviction comprised a "countable" crime of violence for the purpose of determining appellant's status as a career offender. Appellant offered several arguments below, two of which he resuscitates on appeal. First, because the paperwork before the sentencing court did not affirmatively establish that appellant was represented by counsel or afforded appropriate warnings on January 23, 1987 (the date on which his guilt was determined), he claims that the ensuing conviction was "presumptively void" and, therefore, not fit for inclusion in the career offender calculus. Second, he castigates the district  ____________________ 5The charging papers, as well as the Sentencia, were in Spanish. A court-appointed interpreter translated them in open court. Appellant does not impugn either the authenticy of the documents or the accuracy of the translation. 8 court for applying a preponderance-of-the evidence test in determining the adequacy of the government's proof anent the two prior convictions, and insists that a more rigorous standard should have been employed. We consider these issues seriatim. ________ B B Emphasizing our decision in United States v. Isaacs, 14 _____________ ______ F.3d 106, 108-10 (1st Cir. 1994), appellant claims that the documents presented to prove the predicate offense were deficient because they did not address whether he was represented by counsel or afforded a colloquy by the court at a critical juncture. The claim is much too sanguine. It overlooks entirely the Supreme Court's subsequent decision in Custis v. United ______ ______ States, 114 S. Ct. 1732 (1994). The Custis Court held that a ______ ______ defendant in a federal sentencing proceeding, generally speaking, "has no . . . right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions." Id. at 1734. In so holding, Custis ___ ______ significantly restricted the utility of Isaacs. The Custis ______ ______ approach applies full bore in this instance. As we recently ruled in an analogous case, "[a]lthough Custis considered ______ collateral attack under the Armed Career Criminal Act rather than the sentencing guidelines themselves, the constitutional question is the same in each context." United States v. Munoz, 36 F.3d _____________ _____ 1229, 1237 (1st Cir. 1994). We, therefore, steer by Custis ______ rather than by Isaacs.  ______ Custis prohibits collateral attack on prior state-court ______ 9 convictions in federal sentencing proceedings unless the attack is rooted in a violation of the Sixth Amendment right to counsel. Thus, Custis renders nugatory appellant's reliance on the ______ ostensible lack of warnings as a basis for brushing aside the April 1987 conviction. Nonetheless, we must still examine his claim insofar as it relates to the possible absence of counsel.6 But we do not find any substantial indication in the record that Cordero was denied counsel or that he proceeded without counsel. Cordero who had personal knowledge of what transpired in 1987 did not offer any testimony to show that he was, in fact, denied the help of an attorney. That omission left only the documentary evidence and, at worst, the documents before the district court simply fail to clarify whether Cordero had counsel present when he pleaded guilty. When the government seeks to prove a predicate offense for sentencing purposes, it has an initial burden of establishing the existence of the conviction. See United States v. Unger, 915 ___ _____________ _____ F.2d 759, 761 (1st Cir. 1990), cert. denied, 498 U.S. 1104 _____ ______ (1991). It can satisfy this requirement in divers ways, e.g., by ____ an uncontroverted statement in the PSI Report, by introducing a certified copy of the judgment, or by some other satisfactory proffer. Once the government has carried this modest burden, the conviction is presumed valid for purposes of applying the  ____________________ 6The record is crystal clear that an attorney represented appellant at sentencing on April 10, 1987. The record is more tenebrous, however, as to whether counsel was present on the date appellant entered his guilty plea. It is this "defect" to which appellant's hopes are fastened. 10 sentencing guidelines. See id. It then becomes the defendant's ___ ___ obligation to produce some evidence of unconstitutionality before a federal court may disregard the conviction for sentencing purposes. See United States v. Ruo, 943 F.2d 1274, 1276 (11th ___ _____________ ___ Cir. 1991); United States v. Gallman, 907 F.2d 639, 643 (7th Cir. _____________ _______ 1990), cert. denied, 499 U.S. 908 (1991); see also United States _____ ______ ___ ____ _____________ v. Wilkinson, 926 F.2d 22, 28 (1st Cir.) ("Since the number of _________ felony cases where a defendant lacks counsel must be small . . . , a sentencing court may permissibly infer from the record of the conviction that the conviction was not obtained unconstitutionally provided the record contains no reason to believe the contrary."), cert. denied, 501 U.S. 1211 (1991). _____ ______ Here, appellant produced no evidence of a Sixth Amendment violation. He did not himself testify, or otherwise swear, that he was deprived of counsel at a critical time. Rather, he merely argued that the government had failed affirmatively to establish that a lawyer's services had been made available to him. Since the law will presume, in this context, that a conviction was counselled absent specific evidence to the contrary, a defendant who desires to challenge a prior conviction on Sixth Amendment grounds must do more than merely speculate about theoretical possibilities. In the absence of specific evidence, the court below had a right to treat the disputed conviction as constitutional and give it weight in constructing appellant's sentence. C C 11 Appellant's final sentence-related argument posits that the district court erroneously applied the preponderance-of-the- evidence standard in this criminal case. The argument stalls. It is settled beyond cavil that facts used at sentencing need only be proven by a preponderance of the evidence, not beyond a reasonable doubt. See, e.g., United States v. Gonzalez-Vasquez, ___ ____ _____________ ________________ 34 F.3d 19, 25 (1st Cir. 1994); United States v. Tardiff, 969 _____________ _______ F.2d 1283, 1289 (1st Cir. 1992); Wright, 873 F.2d at 441. ______ IV IV We need go no further. Appellant's contentions are uniformly unavailing. Hence, his conviction and sentence endure. Affirmed.  Affirmed. ________ 12