[Not for Publication]
 United States Court of Appeals
 For the First Circuit
 

No. 97-1079

 UNITED STATES,

 Appellee,

 v.

 RODERICK L. SENIOR,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nathaniel M. Gorton, U.S. District Judge] 

 

 Before

 Stahl, Circuit Judge, 
 Cyr, Senior Circuit Judge, 
 and Lynch, Circuit Judge. 

 

Richard H. Gens for appellant. 
Roderick L. Senior on brief pro se. 
Kimberly S. Budd, Assistant United States Attorney, with whom 
Donald K. Stern, United States Attorney, was on brief for appellee. 
 

 December 30, 1997
 
 Per Curiam. Defendant-appellant Roderick L. Senior Per Curiam 

pled guilty to being a deported alien found in the United

States without the consent of the Attorney General, 8 U.S.C.

 1326, and was sentenced to 51 months' imprisonment, the

guidelines minimum. He appeals his sentence, arguing that

(1) he is entitled to a sentence reduction, pursuant to

U.S.S.G. 5G1.3(b), for time served on a prior conviction

taken into account in determining his guidelines sentencing

range; (2) he is entitled to a sentence reduction because the

district court improperly applied U.S.S.G. 4A1.1(d) in

calculating his criminal history category; and (3) he is

entitled to a downward departure for agreeing to immediate

deportation.1 We reject these arguments and affirm his

sentence.

 I. I. 

 Senior, a native and citizen of Jamaica, entered

the United States at Miami in 1983 using a counterfeit birth

certificate. In 1989, he pled guilty in Suffolk

(Massachusetts) Superior Court to possession with intent to

distribute cocaine, and received a five-to-seven-year

  

1. Senior also argues that the district court erroneously
precluded his attack, at his sentencing hearing, on a prior
state conviction. At oral argument, however, Senior conceded
that Custis v. United States, 511 U.S. 485 (1994) forecloses 
this argument. See United States v. Cordero, 42 F.3d 697, 
701 (1st Cir. 1994)(applying Custis to guidelines sentencing 
hearings).
 Senior also raises, in his pro se supplemental brief, a 
concern that his presentence report misstated a prior
offense, and that this error may adversely affect his
treatment while incarcerated. We resolved this concern at
oral argument by eliciting the government's pledge to attach
a letter of correction to Senior's Bureau of Prisons file.
The government has followed through on its promise.

 -3- 3

sentence. In December 1991, Massachusetts paroled Senior to

the Immigration and Naturalization Service (INS), which

identified him as a deportable aggravated felon and, the

following month, deported him to Jamaica. Deportation did

not change his parole status, which was scheduled to continue

until November 28, 1994.

 In April 1992, Senior reentered the United States

without the consent of the Attorney General. In October

1992, he pled guilty to menacing in New York state court, and

he subsequently failed to appear for sentencing. This

episode defaulted Senior's Massachusetts parole status.

Consequently, in December 1992, the Massachusetts Parole

Board issued a warrant for his arrest. Nearly three years

later, in September 1995, he was found and arrested in New

York, returned to Massachusetts on his parole warrant, and

incarcerated in Massachusetts' MCI Gardener prison because of

the parole violation.

 On March 15, 1996, Massachusetts again released

Senior to the INS. He remained in INS custody until April

1996, when the indictment in this case was returned. It

charged Senior with being a deported alien found in the

United States -- at MCI Gardener on March 15, 1996 -- without

the consent of the Attorney General. Following return of the

indictment, the district court ordered Senior detained. His

 -4- 4

detention continued until his sentencing, which took place in

November 1996.

 II. II. 

A. Sentence Reduction Under U.S.S.G. 5G1.32 

 Senior contends that, pursuant to U.S.S.G. 

5G1.3(b), the district court should have reduced his sentence

to account for time served in Massachusetts prison beginning

September 28, 1995. He observes that application note two of

U.S.S.G. 5G1.3(b) requires courts to reduce a sentence by

the period of imprisonment already served as a result of

conduct taken into account in the sentence. He further

asserts that his case fits within this proviso because his

time served since September 28, 1995 resulted from a state

conviction that the district court used to enhance his base

offense level from 8 to 24.

 At the outset, Senior faces an uphill climb because

this argument is raised for the first time on appeal. We

therefore review only for plain error. See United States v. 

Taylor, 54 F.3d 967, 972 (1st Cir. 1995). We may find plain 

error only if the error "skewed the fundamental fairness or

basic integrity of the proceeding below in some major

respect." Id. at 973. And we may correct such an error only 

if "a miscarriage of justice would otherwise result." Id. 

  

2. All references are to the 1995 version of the sentencing
guidelines, which indisputably apply here.

 -5- 5

(citing United States v. Frady, 456 U.S. 152, 163 n.14 

(1982)).

 Senior's argument overlooks the fact that

application note 2 of U.S.S.G 5G1.3(b) is triggered only by

a district court determination that the Bureau of Prisons

will not credit a federal sentence with time already served

for conduct taken into account in determining the guidelines

range. See U.S.S.G. 5G1.3, comment. (n. 2). Here, the 

presentence report indicates that the Bureau of Prisons will

reduce Senior's sentence for his time served beginning on

September 28, 1995. The district court, by implication,

adopted this conclusion, and Senior does not contest it.3

Rather, Senior does not allege that his time served will not

properly be credited by the Bureau of Prisons; he merely

seeks, by another means, what he is already destined to

receive. Thus, we find no error, let alone plain error.

B. Alleged Error in Applying U.S.S.G. 4A1.1(d) 

 Senior contends, in his pro se supplemental brief, 

that the district court should not have increased his

criminal history category by two points under U.S.S.G. 

4A1.1(d) because he was not under a criminal justice sentence

  

3. Indeed, Senior recognized in his brief: "Although there
is some indication in the record that the Bureau of Prisons
would deal with the matter of the credit to be awarded to
defendant, the defendant was entitled by the clear mandate of
the guideline and commentary to the reduction of his
sentence." Id. 

 -6- 6

at the time of the instant offense. Questions such as this,

which involve the applicability of a sentencing guideline,

are reviewed by this court de novo. See United States v. 

Ruiz, 105 F.3d 1492, 1504 (1st Cir. 1997).  

 Senior correctly states that U.S.S.G. 4A1.1(d)

applies only if the instant offense occurred while he was

under a criminal justice sentence. He then argues that this

guideline does not apply because the execution of his arrest

warrant in 1995 occurred after the scheduled discharge date

of his parole. Therefore, in his view, two points should not

have been added to his criminal history category.

 Senior mistakenly perceives his arrest on the

Massachusetts warrant as the relevant offense. The relevant

offense, i.e., the one for which he was sentenced, is being

illegally in this country without the consent of the Attorney

General, 8 U.S.C. 1326. Senior's argument thus rests on a

faulty premise. 

 At any rate, whether we look to the date of his

unlawful reentry (in April 1992) or of his apprehension (on

March 15, 1996), Senior was under a criminal justice sentence

at either time. It seems obvious that, in April 1992, Senior

was still on parole for his 1989 possession offense, and

that, on March 15, 1996, Senior was still imprisoned for that

 -7- 7

parole violation.4 Accordingly, we find no error in the

district court's application of U.S.S.G. 4A1.1(d).

C. Downward Departure for Agreeing to be Deported 

 Lastly, Senior argues that the district court's

decision not to grant a downward departure for his agreeing

to be deported is reviewable because it was not an exercise

of discretion but a ruling based on a mistaken understanding

of the law. Senior further asserts that, because of its

mistaken understanding that it could not depart, the court

did not consider the facts or merits of his request.

 A district court's discretionary decision not to

depart below the guideline sentencing range is not

reviewable, except where there is a mistake of law. See 

United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994). 

 We need not decide whether the district court had

the authority to grant the requested downward departure. The

district court made it clear that it would not grant a

downward departure even if it could. Clearly, this statement

belies Senior's contention that the court did not consider

the merits of his argument for a downward departure.

Moreover, it renders utterly harmless any mistaken view of

  

4. We look to both the date of reentry and the date of
apprehension because the indictment did not charge Senior
with unlawful reentry; it only charged him with being found
in the United States, without consent from the Attorney
General, following arrest and deportation. Because Senior
was under a criminal justice sentence on both dates, we need
not decide which is applicable.

 -8- 8

the law harbored by the court. Therefore, even if we had

jurisdiction to entertain this argument, we would reject it.

 Affirmed. Affirmed 

 -9- 9