USCA1 Opinion

 

 [Not for Publication] United States Court of Appeals For the First Circuit ____________________ No. 97-1079 UNITED STATES, Appellee, v. RODERICK L. SENIOR, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Cyr, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Richard H. Gens for appellant. _______________ Roderick L. Senior on brief pro se. __________________ Kimberly S. Budd, Assistant United States Attorney, with whom _________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ December 30, 1997 ____________________ Per Curiam. Defendant-appellant Roderick L. Senior Per Curiam __________ pled guilty to being a deported alien found in the United States without the consent of the Attorney General, 8 U.S.C. 1326, and was sentenced to 51 months' imprisonment, the guidelines minimum. He appeals his sentence, arguing that (1) he is entitled to a sentence reduction, pursuant to U.S.S.G. 5G1.3(b), for time served on a prior conviction taken into account in determining his guidelines sentencing range; (2) he is entitled to a sentence reduction because the district court improperly applied U.S.S.G. 4A1.1(d) in calculating his criminal history category; and (3) he is entitled to a downward departure for agreeing to immediate deportation.1 We reject these arguments and affirm his sentence. I. I. __ Senior, a native and citizen of Jamaica, entered the United States at Miami in 1983 using a counterfeit birth certificate. In 1989, he pled guilty in Suffolk (Massachusetts) Superior Court to possession with intent to distribute cocaine, and received a five-to-seven-year  ____________________ 1. Senior also argues that the district court erroneously precluded his attack, at his sentencing hearing, on a prior state conviction. At oral argument, however, Senior conceded that Custis v. United States, 511 U.S. 485 (1994) forecloses ______ _____________ this argument. See United States v. Cordero, 42 F.3d 697, ___ ______________ _______ 701 (1st Cir. 1994)(applying Custis to guidelines sentencing ______ hearings). Senior also raises, in his pro se supplemental brief, a ___ __ concern that his presentence report misstated a prior offense, and that this error may adversely affect his treatment while incarcerated. We resolved this concern at oral argument by eliciting the government's pledge to attach a letter of correction to Senior's Bureau of Prisons file. The government has followed through on its promise. -3- 3 sentence. In December 1991, Massachusetts paroled Senior to the Immigration and Naturalization Service (INS), which identified him as a deportable aggravated felon and, the following month, deported him to Jamaica. Deportation did not change his parole status, which was scheduled to continue until November 28, 1994. In April 1992, Senior reentered the United States without the consent of the Attorney General. In October 1992, he pled guilty to menacing in New York state court, and he subsequently failed to appear for sentencing. This episode defaulted Senior's Massachusetts parole status. Consequently, in December 1992, the Massachusetts Parole Board issued a warrant for his arrest. Nearly three years later, in September 1995, he was found and arrested in New York, returned to Massachusetts on his parole warrant, and incarcerated in Massachusetts' MCI Gardener prison because of the parole violation. On March 15, 1996, Massachusetts again released Senior to the INS. He remained in INS custody until April 1996, when the indictment in this case was returned. It charged Senior with being a deported alien found in the United States -- at MCI Gardener on March 15, 1996 -- without the consent of the Attorney General. Following return of the indictment, the district court ordered Senior detained. His -4- 4 detention continued until his sentencing, which took place in November 1996. II. II. ___ A. Sentence Reduction Under U.S.S.G. 5G1.32 _____________________________________________ Senior contends that, pursuant to U.S.S.G.  5G1.3(b), the district court should have reduced his sentence to account for time served in Massachusetts prison beginning September 28, 1995. He observes that application note two of U.S.S.G. 5G1.3(b) requires courts to reduce a sentence by the period of imprisonment already served as a result of conduct taken into account in the sentence. He further asserts that his case fits within this proviso because his time served since September 28, 1995 resulted from a state conviction that the district court used to enhance his base offense level from 8 to 24. At the outset, Senior faces an uphill climb because this argument is raised for the first time on appeal. We therefore review only for plain error. See United States v. ___ _____________ Taylor, 54 F.3d 967, 972 (1st Cir. 1995). We may find plain ______ error only if the error "skewed the fundamental fairness or basic integrity of the proceeding below in some major respect." Id. at 973. And we may correct such an error only ___ if "a miscarriage of justice would otherwise result." Id. ___  ____________________ 2. All references are to the 1995 version of the sentencing guidelines, which indisputably apply here. -5- 5 (citing United States v. Frady, 456 U.S. 152, 163 n.14 ______________ _____ (1982)). Senior's argument overlooks the fact that application note 2 of U.S.S.G 5G1.3(b) is triggered only by a district court determination that the Bureau of Prisons will not credit a federal sentence with time already served for conduct taken into account in determining the guidelines range. See U.S.S.G. 5G1.3, comment. (n. 2). Here, the ___ presentence report indicates that the Bureau of Prisons will reduce Senior's sentence for his time served beginning on September 28, 1995. The district court, by implication, adopted this conclusion, and Senior does not contest it.3 Rather, Senior does not allege that his time served will not properly be credited by the Bureau of Prisons; he merely seeks, by another means, what he is already destined to receive. Thus, we find no error, let alone plain error. B. Alleged Error in Applying U.S.S.G. 4A1.1(d) _________________________________________________ Senior contends, in his pro se supplemental brief, ___ __ that the district court should not have increased his criminal history category by two points under U.S.S.G.  4A1.1(d) because he was not under a criminal justice sentence  ____________________ 3. Indeed, Senior recognized in his brief: "Although there is some indication in the record that the Bureau of Prisons would deal with the matter of the credit to be awarded to defendant, the defendant was entitled by the clear mandate of the guideline and commentary to the reduction of his sentence." Id. ___ -6- 6 at the time of the instant offense. Questions such as this, which involve the applicability of a sentencing guideline, are reviewed by this court de novo. See United States v. __ ____ ___ _____________ Ruiz, 105 F.3d 1492, 1504 (1st Cir. 1997).  ____ Senior correctly states that U.S.S.G. 4A1.1(d) applies only if the instant offense occurred while he was under a criminal justice sentence. He then argues that this guideline does not apply because the execution of his arrest warrant in 1995 occurred after the scheduled discharge date of his parole. Therefore, in his view, two points should not have been added to his criminal history category. Senior mistakenly perceives his arrest on the Massachusetts warrant as the relevant offense. The relevant offense, i.e., the one for which he was sentenced, is being illegally in this country without the consent of the Attorney General, 8 U.S.C. 1326. Senior's argument thus rests on a faulty premise.  At any rate, whether we look to the date of his unlawful reentry (in April 1992) or of his apprehension (on March 15, 1996), Senior was under a criminal justice sentence at either time. It seems obvious that, in April 1992, Senior was still on parole for his 1989 possession offense, and that, on March 15, 1996, Senior was still imprisoned for that -7- 7 parole violation.4 Accordingly, we find no error in the district court's application of U.S.S.G. 4A1.1(d). C. Downward Departure for Agreeing to be Deported __________________________________________________ Lastly, Senior argues that the district court's decision not to grant a downward departure for his agreeing to be deported is reviewable because it was not an exercise of discretion but a ruling based on a mistaken understanding of the law. Senior further asserts that, because of its mistaken understanding that it could not depart, the court did not consider the facts or merits of his request. A district court's discretionary decision not to depart below the guideline sentencing range is not reviewable, except where there is a mistake of law. See ___ United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994). _____________ ______ We need not decide whether the district court had the authority to grant the requested downward departure. The district court made it clear that it would not grant a downward departure even if it could. Clearly, this statement belies Senior's contention that the court did not consider the merits of his argument for a downward departure. Moreover, it renders utterly harmless any mistaken view of  ____________________ 4. We look to both the date of reentry and the date of apprehension because the indictment did not charge Senior with unlawful reentry; it only charged him with being found in the United States, without consent from the Attorney General, following arrest and deportation. Because Senior was under a criminal justice sentence on both dates, we need not decide which is applicable. -8- 8 the law harbored by the court. Therefore, even if we had jurisdiction to entertain this argument, we would reject it. Affirmed. Affirmed ________ -9- 9