**Michael INDELICATO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. Civ. 99–10408–PBS.**

United States District Court,
D. Massachusetts.

July 19, 2000.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

In this habeas petition, Michael Indelicato, who was convicted of drug trafficking in 1995, seeks to withdraw his guilty pleas on the ground that he was persuaded to plead based upon the strength of wiretap evidence he claims was obtained in violation of the Fourth Amendment. Specifically, Petitioner asserts that the evidence against him was obtained primarily from the interception of oral, wire, and electronic communications, and that he only recently learned that the affidavit which supported the United States' application for an order authorizing those interceptions contained material omissions and misinformation. For the reasons stated below, Petitioner's motion is **DENIED.**

### BACKGROUND

The following facts are uncontested, unless otherwise noted.

In the fall of 1993, a confidential informant ("CI–1") provided the Federal Bureau of Investigation ("FBI") with information that Petitioner was engaged in large-scale drug trafficking. As of that time, the FBI had been using CI–1 for more than two years as a confidential informant in investigations involving organized crime and drug trafficking. On March 18, 1994, the United States applied for authorization to intercept oral and wire communications emanating from Indelicato's business, Maplewood Jewelers, located in Malden, Massachusetts, and wire communications from a phone number assigned to Mercury Trucking and Excavating, Inc., also located in Malden.

The government's application included a thirty-eight page affidavit signed by FBI Special Agent James J. DeStefano, which provided detailed information on the status of the Indelicato investigation. The affidavit laid out the information the government had received from CI–1, as well as

Robert L. Sheketoff, Sheketoff & Homan, Boston, MA, for plaintiff.

George W. Vien, United States Attorney's Office, Boston, MA, for defendant.

two other confidential informants. In explaining the need for a wiretap authorization, the affidavit stated that: the confidential informants were "not familiar with all of Michael Indelicato's associates and their roles in this ongoing conspiracy"; the CI's were "not privy to the activities taking place at Maplewood Jewelers on a daily basis"; and the CI's were "not in a position to be introduced to all of the high-level members of Indelicato's organization, particularly his source of supply." (DeStefano Aff. ¶¶ 7–9, 11, 14). The affidavit also stated that CI–1 and another confidential informant had "refused to testify under any circumstances" (*Id.* ¶ 63.) and that, even if they agreed to testify, "their testimony would not, without the requested electronic surveillance, result in a successful prosecution of all the participants" because none of the CI's knew the name of Indelicato's Colombian supplier, where Indelicato stored the cocaine and his drug proceeds, or the scope of the conspiracy. (*Id.*)

The government's application for wiretap authorization was approved by District Judge Rya Zobel on March 18, 1994. On May 7, 1994, an intercepted phone call and pager contact indicated that Petitioner was making a drug purchase later that day. Authorities arrested Petitioner just after the deal was made, and while he was in possession of four kilograms of cocaine.

In June of 1994, a grand jury returned an indictment against Petitioner and two other defendants. In July of 1994, Petitioner and his co-defendants filed a Joint Motion for Disclosure of Informants. The government filed an opposition, citing *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and in August, 1994 Magistrate Judge Bowler denied the motion. On September 27, 1994, Petitioner was charged in a Second Superseding Indictment with five counts of distributing or conspiring to distribute cocaine; four counts of being a felon in possession of firearms or ammunition; one count of wire fraud; one count of conspiring to defraud the United States; and one criminal forfeiture count. On January 17, 1995, Petitioner changed his plea to guilty on all counts against him, except the felon in possession of a firearm charges.[1]

According to Petitioner, sometime in March of 1998 he received a copy of a report from the Massachusetts State Police, indicating that an individual named Vincent Ricci ("Ricci") had been one of the informants against him. Moreover, in September of 1998 Ricci was identified in news reports as having admitted to acting as an FBI informant. Petitioner's attorney also claims to have observed Ricci testify at the sentencing phase of Ricci's own trial on state charges, and states that Ricci described some of the cooperation he had offered to the FBI. Petitioner alleges, through a proffer made by his attorney, that he was stunned by the revelation that Ricci was, in the Petitioner's view, CI–1. Also according to the attorney proffer, Ricci and the Petitioner shared a close relationship, and Ricci was privy to, participated in, and benefitted from the same drug trafficking activities that led to the Petitioner's indictment. The proffer asserts that Ricci could have provided the government with all of the information which the government claimed it could not obtain from its confidential informants or other normal investigative techniques. Accordingly, Petitioner asserts that the government's application for a wiretap authorization was fatally flawed, and that if Petitioner had known that Ricci was CI–1, Petitioner would have successfully suppressed the wiretap evidence and would not have pled guilty.

The government asserts that, assuming that Ricci was, in fact, CI–1 (which the

---

1. At a jury-waived, stipulated facts trial before this Court, Indelicato was convicted on the firearm counts and sentenced to a ten-year term of incarceration. He successfully appealed these convictions and they were subsequently vacated. *See United States v. Indelicato*, 97 F.3d 627 (1st Cir.1996).

government does not concede), Petitioner is nonetheless factually and legally incorrect. In an affidavit supporting the government's opposition to Petitioner's § 2255 motion, DeStefano outlines the specific information which CI–1 could not provide, and states that Petitioner purposely kept CI–1 in the dark on certain details of his drug trafficking business. DeStefano's affidavit outlines the information provided by CI–1 to the government, and it varies in significant measure from the attorney's proffer with respect to the relationship between Indelicato and CI–1. The government points out that neither the Petitioner nor his attorney specifically rebut the particularized allegations in the wiretap affidavit regarding what CI–1 knew or did not know. Moreover, the government highlights the fact that CI–1, who feared for his safety, refused to testify under any circumstances. As such, the wiretap authorization was properly issued and would not have been suppressed.

### DISCUSSION

A habeas petitioner has the burden of establishing that he is entitled to a hearing on his § 2255 petition. *See Barrett v. United States,* 965 F.2d 1184, 1186 (1st Cir.1992). A hearing is unnecessary when the record conclusively refutes the asserted claims. *See Carey v. United States,* 50 F.3d 1097, 1098 (1st Cir.1995). In order to clinch an evidentiary hearing, a petitioner must "tender more than conclusory allegations." *David v. United States,* 134 F.3d 470, 478 (1st Cir.1998). A court may summarily dismiss a petition containing specific factual allegations if the allegations are insufficient "in light of relevant constitutional standards and the record." *Barrett,* 965 F.2d at 1186 (quoting *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir. 1974)). Further, a court may dismiss a § 2255 petition in reliance on its own recollection of prior events. *See Cohen v. United States,* 996 F.Supp. 110, 112 (D.Mass.1998).

One threshold issue is worth addressing. The government objects to the Petitioner's failure to provide his own affidavit attesting to the facts asserted in his motion. Instead, the "attorney's proffer" offered by attorney Carmine Lepore states that Petitioner would be able to prove various facts if granted an evidentiary hearing. Petitioner's attorney represents that Petitioner would himself provide an affidavit if he was assured that the government would not use it against him at a new trial. To this end, Petitioner seeks to extend the protection afforded under *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), which addressed this "Catch–22" in the Fourth Amendment context. For the purposes of resolving this motion, I have assumed that Petitioner could provide an affidavit incorporating all of the facts offered in both the motion and the "attorney's proffer."

### A. *Timeliness*

The government first argues that Petitioner's § 2255 motion is untimely and should be dismissed.

Under Section 105 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), there is a one-year period of limitation governing motions for collateral relief under § 2255. The one year period runs from the latest of four specified events: (1) "the date on which the judgment of conviction became final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255.

■ Petitioner's conviction was final as of October 15, 1996, when the Court of Appeals affirmed the conviction he now seeks to vacate. He relies on the fourth statutory category as the basis for the timeliness of his motion. In his affidavit, Petitioner alleges that "sometime during middle to late March of 1998" he received a copy of the State Police memo in which Ricci "outs" himself as an informant in Petitioner's case. The government protests that Petitioner might have, through due diligence, become aware of the contents of that memo earlier. But, the government does not offer any reason why Petitioner would have come across the memo sooner, or why Petitioner would necessarily have had advance notice of its substance. The government maintains that the Petitioner might have inferred from the wiretap affidavit itself that CI–1 was a person who had enjoyed an extensive contact with Petitioner. Moreover, surmising that CI–1's knowledge would affect the government's ability to obtain authorization for electronic surveillance, Petitioner could have used this point to argue more forcefully for his motion for disclosure of informants. In that way, Petitioner could have used "due diligence" as early as July of 1994 to learn that Ricci was an informant.

While it is true that the DeStefano affidavit reveals CI–1 to be a person in Petitioner's close circle of associates, the government's arguments on the timeliness issue call for speculation and second-guessing. The government does not suggest how Petitioner might have obtained a copy of the State Police report sooner. Based on this record, I conclude that, without the State Police report, Petitioner lacked the factual basis on which he bases his § 2255 claim. Petitioner and his attorney maintain that he received the report in March of 1998; his § 2255 motion was filed in February of 1999. It is timely.

### B. *Standard for Collateral Attack on a Guilty Plea*

The first area of dispute is whether Petitioner, having entered an unconditional guilty plea, may now challenge an alleged constitutional deprivation that preceded the guilty plea. The Petitioner maintains that the government intentionally withheld material, exculpatory information from him, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that Petitioner's plea was thus not "intelligent."

Four Circuits have held that defendants may bring section 2255 petitions challenging the voluntary and intelligent nature of their guilty pleas based upon *Brady* violations which came to light after the plea. *See Sanchez v. United States,* 50 F.3d 1448, 1453 (9th Cir.1995) (rejecting a post-plea challenge because *Brady* did not require the government to disclose the drug supplier's status as informant); *United States v. Wright,* 43 F.3d 491, 496–97 (10th Cir.1994) (holding that the withholding of material evidence could taint a criminal proceeding so substantially that the defendant's decision to plead guilty could not fairly be called knowing and voluntary, but rejecting a claim that the prosecutor's failure to disclose evidence of its pocket immunity agreements was relevant to a motion to dismiss for prosecutorial misconduct); *White v. United States,* 858 F.2d 416, 422 (8th Cir.1988) (denying a habeas petition where the government failed to disclose prior inconsistent statements and other impeachment materials of its key witness prior to a plea and concluding that habeas relief would be the "rare exception" for collateral attacks on guilty pleas);[2] *Campbell v. Marshall,* 769 F.2d 314, 321 (6th Cir.1985)

---

**2.** The Eighth Circuit has been unclear on this issue, however, and in a subsequent case held that a defendant's guilty plea precluded him from raising a claim of failure to disclose favorable evidence in a habeas petition. *See Smith v. United States,* 876 F.2d 655, 657 (8th Cir.1989).

(finding that the government's belated disclosure of exculpatory evidence supporting a self-defense theory did not detract from the factual basis for the defendant's plea); *Fambo v. Smith,* 433 F.Supp. 590, 598–99 (W.D.N.Y.1977) (finding that the prosecution violated its duty to turn over evidence that the police had substituted sawdust for explosive material, thus rendering it factually impossible for the defendant to have committed the charged crime); *cf. Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988) (concluding that even pleas of not guilty by reason of insanity may be vulnerable to challenge if they were entered without knowledge of material evidence of factual innocence that was withheld by the prosecution); *but see Matthew v. Johnson,* 201 F.3d 353, 361–62 (5th Cir.2000) ("Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.").

In response, the government cites the Supreme Court's decisions in *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) and the "*Brady* trilogy"[3] for the proposition that a defendant who has pled guilty may not raise collateral challenges based on alleged constitutional deprivations which preceded his guilty plea and which do not implicate the court's jurisdiction.[4] In *Tollett,* which involved a newly discovered claim that the prosecution had systematically excluded members of his racial group from the grand jury, the Court held that:

A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense ... he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*

*Tollett,* 411 U.S. at 267, 93 S.Ct. 1602.

Petitioner emphasizes the following passage from *Brady v. United States:* "More particularly, *absent misrepresentation or other impermissible conduct by state agents,* a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (emphasis added) (internal citation omitted). Petitioner maintains that his case falls into the situation expressly reserved to redress governmental misconduct.

While the First Circuit has not addressed the precise issue here, it has held: "[A] valid guilty plea waives all challenges to the actual and legal foundations of the charges." *United States v. Martinez–Martinez,* 69 F.3d 1215, 1224 (1st Cir. 1995); *see also United States v. Cordero,* 42 F.3d 697, 698–99 (1st Cir.1994) (following *Tollett*'s rule that an unconditional guilty plea effectuates a waiver of all nonjurisdictional errors that marred the case

---

**3.** That trilogy of cases was decided by the Supreme Court on May 4, 1970. It included *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

**4.** Petitioner's argument that this case falls into the *Tollett* exception for "jurisdictional defects" is far-fetched. A similar argument was attempted, and rejected, in *United States v. Cordero,* 42 F.3d 697, 699 (1st Cir.1994) (stating that an erroneous suppression ruling is not "jurisdictional" in any meaningful sense; a "jurisdictional defect is one that calls into doubt a court's power to entertain a matter").

up to that point). In the government's view, the cases cited by Petitioner represent a rare exception in which the government is shown to have withheld evidence tending to negate a defendant's guilt. In *Miller*, for example, the government had withheld evidence that connected another person with several of the murders with which Miller was charged. *See* 848 F.2d at 1321. But even if an exception to the *Tollett* rule exists, to account for such egregious cases, the government argues that Petitioner's case does not fit such an exception. Here, the evidence Petitioner alleges the government withheld has no bearing on his actual guilt or innocence. Indeed, Petitioner does not even call into question the truthfulness of his guilty plea.

Petitioner insists that the relevant distinction in deciding whether a habeas petitioner should be allowed to challenge constitutional deprivations that preceded a plea is whether he could have known about them at the time of the plea. To be sure, there is a logical distinction between *Cordero,* involving a post-plea challenge to an erroneous suppression ruling, and a case such as this one, in which the alleged misconduct obscured both the defendant's and the presiding judge's understanding of facts which might have given rise to suppression of key evidence. Petitioner further argues, fairly so, that a close reading of the cases reveals that the link between the alleged constitutional deprivation and the Petitioner's factual innocence has never been made an express requirement.

The starting point for analyzing the availability of collateral attacks on guilty pleas is *Tollett* and its progeny. Emphasizing that waiver was not the "basic ingredient" of the *Tollett* line of cases, the Supreme Court has held: "A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." *Menna v. New York,* 423 U.S. 61, 62–63 n. 2, 96 S.Ct. 241, 242 n. 2,

46 L.Ed.2d 195 (1975) (holding that a guilty plea does not bar a double jeopardy claim on direct appeal). *In Haring v. Prosise,* an action pursuant to 42 U.S.C. § 1983, the Supreme Court further explained:

> Our decision in *Tollett* and the cases that followed simply recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.

462 U.S. 306, 318, 103 S.Ct. 2368, 2375–76, 76 L.Ed.2d 595 (1983). An analysis of the caselaw in this area suggests that a collateral attack on a guilty plea based on an alleged *Brady* violation has only succeeded (as in *Miller*) when it undercuts the factual basis for the guilty plea. In this circuit, a claim of innocence is a key (but not dispositive) factor in determining whether to permit a defendant to withdraw a guilty plea. *Cf. United States v. Muriel,* 111 F.3d 975, 980 (1st Cir.1997) ("A defendant's assertion of innocence may cause a court to look favorably upon a motion to withdraw. Conversely, the lack of a claim of innocence weighs in favor of sustaining a guilty plea.").

The unresolved question is whether egregious government misconduct (like a deliberate material misrepresentation in an affidavit supporting a warrant) unknown prior to the plea but not implicating guilt or innocence provides a cognizable claim on a habeas petition. *Tollett* (involving deliberate racial discrimination in selection of the grand jurors not discovered until after the plea) suggests that the better answer is no, but *Wright* and *Sanchez* create uncertainty when there are claims of egregious government misconduct.

Even if a challenge to the admissibility of wiretap evidence based on an undisclosed material misrepresentation in the affidavit by a government agent were cognizable on a habeas petition, Petitioner's

argument fails for two reasons. First, Petitioner has failed to show that any allegedly withheld evidence was "material," within the meaning of *Brady* and *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985) to his decision to plead guilty. Second, Petitioner's allegations of omissions and misstatements raise no inference of intentional falsity or reckless disregard for the truth under the standard set by *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2675, 57 L.Ed.2d 667 (1978); nor do they meet a *Franks* materiality standard.

### 1. *Brady* Materiality

■ Under *Brady*, suppression by the government of evidence favorable to an accused violates the Fourteenth Amendment right to due process if the evidence is material to either guilt or punishment. *See* 383 U.S. at 87, 86 S.Ct. 669. In determining whether withheld evidence was "material," the test is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (citing *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375). A "reasonable probability" of a different result occurs where the government's suppression "undermines confidence in the outcome" of the proceeding. *Bagley*, 473 U.S. at 678, 105 S.Ct. 3375. In cases allowing challenges to guilty pleas based on withheld evidence, a petitioner must show a reasonable probability that, but for the prosecution's withholding of that evidence, he would have refused to plead and opted to go to trial. *See Sanchez*, 50 F.3d at 1454. This test for materiality is an objective one. *See id.*

■ Petitioner asserts that the government wrongfully withheld Ricci's identity, and misled the authorizing judge (as well as the defendant) in the DeStefano affidavit about the extent to which Ricci was familiar with Petitioner's drug activities. Petitioner contends that if the government had disclosed Ricci's identity, Petitioner would have declined to plead and would have successfully challenged the validity of the government's wiretap authorization at a suppression hearing.

I find no merit to petitioner's argument that disclosure of Ricci's identity would have given rise to a viable possibility of suppressing the wiretap evidence and thus affected his decision to plead. Under 18 U.S.C. § 2518(1)(c), as a requirement for obtaining wiretap authorization, the government must provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." But, this provision "is not designed to force the Government to have exhausted all other investigative procedures." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.1977) (internal quotations omitted). Rather, the statutory language "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Id.* (citing *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974)).

■ The government need not use "every available incentive to induce informants to testify," such as offering protective custody, before seeking a wiretap order. *Id.* at 227 n. 5; *see also United States v. Santarpio*, 560 F.2d 448, 452 (1st Cir.1977) (finding a wiretap authorization was properly issued, where the application laid out information gathered over a three month investigation and where informants were unwilling to testify). Rather, the government's affidavit need only indicate a "reasonable likelihood" that alternative techniques would fail to fully expose the crime. *See United States v. Ashley*, 876 F.2d 1069, 1074 (1st Cir.1989).

Here, the affidavit supporting the wiretap application contained extensive detail

regarding the investigation which the FBI had undertaken up to that point, including CI–1's knowledge of Petitioner's drug business. Petitioner insists that the government emphasized CI–1's "insulation" from Petitioner's enterprise, but the affidavit also made clear that CI–1 had "refused to testify under any circumstances because of fear of personal or family safety." (Destefano Aff. ¶ 63.) It outlines the basis for this fear. Sources were aware of "several acts of violence committed by associates of Indelicato against people who have crossed them"; threats to potential cooperators; and knowledge that Indelicato's girlfriend was a mole in the FBI who had access to confidential information. (*Id.* ¶ 63, § 20).

Moreover, the DeStefano affidavit details the limits of several traditional investigative techniques, including: physical surveillance; use of grand jury subpoenas; undercover agents; interviews of subjects or their known associates; search warrants; pen registers and telephone tolls. Although consensual recordings were not discussed in the affidavit, CI–1's fear of Indelicato would preclude that option as well. In the paragraph addressing "subjects or their known associates," the affidavit does not represent that one or more of Petitioner's associates were unknown to the FBI; rather, DeStefano reasserts that seeking evidence through Petitioner's associates would still not provide the identities of all the persons involved, nor the location of documents, drugs, and money. It is also worth noting that Petitioner's use of pager codes to evade detection was one of the factors which the affidavit described as an impediment to the government's effort to obtain evidence of Petitioner's crimes. In fact, it was the detection via surveillance of pager activity that led directly to Petitioner's arrest. Petitioner has made no showing that Ricci, if he was CI–1, could have decoded the cryptic pager signals for the FBI.

Under these circumstances, Indelicato lacks any valid argument that the electronic surveillance order was issued in error. Based on the record, there is no reasonable probability that the revelation of CI–1's identity would have led to suppression of the wiretap evidence. Moreover, there is no reasonable probability that Petitioner's lack of knowledge of CI–1's identity was causally connected to his decision to plead. Petitioner knew from the affidavit that CI–1 was a person with whom he had a close relationship, yet he did not press for his identity to mount a possible suppression motion. A defendant's decision to plead may be based on a myriad of considerations. *See Brady,* 397 U.S. at 750, 90 S.Ct. 1463; *Tollett,* 411 U.S. at 263, 93 S.Ct. 1602. In a different context, the Supreme Court has stated that "it is impermissible for a court to assume that a plea of guilty is based on a defendant's determination that he would be unable to prevail on a motion to suppress evidence." *Haring,* 462 U.S. at 318, 103 S.Ct. 2368 (allowing a plaintiff's § 1983 claim to proceed, since his guilty plea had no bearing on the strength of the Fourth Amendment challenge he might have raised). Even if the government were aware of, and had disclosed, all the information Petitioner has asserted, this would have produced no more than a flaccid suppression challenge. Petitioner would have had no objective legal basis for a decision not to plead.

### 2. *Franks* issues

▇ Having concluded that the information allegedly withheld is not "material" under a *Brady* due process analysis, similar considerations govern an analysis under *Franks v. Delaware. Franks* governs both omissions and affirmative misrepresentations made in a governmental affidavit that supports probable cause. *See United States v. Hadfield,* 918 F.2d 987, 993 (1st Cir.1990); *United States v. Cole,* 807 F.2d 262, 267–68 (1st Cir.1986). Under *Franks,* in order to gain an evidentiary hearing, a defendant must make a preliminary threshold showing that: 1) the government has made omissions or misstate-

ments "with the intent to make, or in reckless disregard of whether they thereby made the affidavit misleading;" and 2) that such omitted facts or misstatements were material. *See Franks,* 438 U.S. at 156, 98 S.Ct. 2674; *United States v. Colkley,* 899 F.2d 297, 300 (4th Cir.1990).

The *Franks* standards have been extended to wiretap affidavits and applications under Title III. *See Cole,* 807 F.2d at 267; *United States v. Mastroianni,* 749 F.2d 900, 909 (1st Cir.1984). Material information is information which reasonably might have prompted the issuing judge to have denied the wiretap application because the government had not made the requisite necessity showing. *See United States v. Simpson,* 813 F.2d 1462, 1471 (9th Cir.1987) (affirming the suppression of wiretap evidence where the court found omissions and misstatements were made with an intent to mislead); *United States v. Ippolito,* 774 F.2d 1482, 1485–86 (9th Cir.1985) (suppressing wiretap evidence where the court found that the government had instructed a willing confidential informant to falsely state that he would be unwilling to testify); *United States v. Salemme,* 978 F.Supp. 343, 349 (D.Mass. 1997).

Petitioner's motion and accompanying allegations fail both prongs of the *Franks* test. Taking the "materiality" component first, several flaws are evident. The information contained in the "attorney's proffer" is not logically inconsistent with the majority of the statements made in the wiretap affidavit. Specifically, even *if* Ricci is CI–1, and even *if* Ricci and Petitioner shared the relationship outlined in the proffer, the proffer does not offer facts to specifically contest that CI–1 was "not privy to the activities taking place at Maplewood Jewelers on a daily basis"; or that CI–1 had not been made privy "to where Indelicato stores cocaine, where Indelicato maintains his drug proceeds, or the scope of the conspiracy." Also, the proffer does not dispute that CI–1 would have been unwilling to testify.

The primary points which petitioner disputes then, are whether Ricci (if he was CI–1) knew the name and phone numbers of Petitioner's drug suppliers, and whether he was in a position to be introduced to the high-level members of Petitioner's organization. As to these points of contention, however, even if the government had included the fact that CI–1 knew the name and phone number of Petitioner's drug source (if that is indeed true), that disclosure would have had little bearing on the government's showing of necessity for the wiretap because of the fear factor. As discussed above, the government need not have pursued more aggressive ways of persuading reluctant, fearful informants to testify before seeking wiretap authorization. *See Scibelli,* 549 F.2d at 226; *Santarpio,* 560 F.2d at 452.

Petitioner looks to the *Salemme* decision for support, but ignores several ready grounds for distinction. In *Salemme,* the district court found substantial evidence to suggest that the government had wholly failed to disclose in its wiretap application that two prime targets of the wiretap surveillance had been acting as FBI informants. 978 F.Supp. at 347. In fact, the government sought authorization to intercept conversations in an automobile used by informants James "Whitey" Bulger and Stephen Flemmi, but did not make any reference to their informant status in the wiretap application. *See id.* at 348–49. In *Salemme,* it was obviously within the government's knowledge that Bulger and Flemmi were informants; the failure to even indirectly disclose that fact thus entitled the defendants to a *Franks* hearing. Here, however, since there is no evidence that the government knew the facts that Petitioner is asserting (assuming, of course, that they are true), there has been no threshold showing of any intent to mislead.

In sum, Petitioner has not made a substantial showing that the government was intentional or reckless in its alleged omissions or misrepresentations. Instead, Pe-

titioner's motion relies upon conclusory allegations that if CI–1 is Ricci, and if Ricci knew what Petitioner asserts that he knew, then the government's wiretap affidavit contains material omissions and misinformation made with an intent to mislead. *Franks* requires a showing that the government affiant, not the informant, made misstatements or omissions with deliberateness or recklessness. 438 U.S. at 172, 98 S.Ct. 2674. Had he not pled, Petitioner's allegations would not have entitled him to a *Franks* hearing in any event.

### ORDER

For the foregoing reasons, Petitioner's motion is **DENIED.**