UNITED STATES of America, Plaintiff,

v.

Carlos SOTO–DEL VALLE; Joaquin Cruz–Jimenez; Federico Villarman–Oviedo; Teddy Leon–Ayala, Defendants.

No. Crim. 99–077(JAF).

United States District Court, D. Puerto Rico.

June 16, 2000.

---

Edwin O. Vazquez–Berrios, Asst. U.S. Attorney, Criminal Division, Guillermo Gil, United States Attorney, San Juan, PR, for plaintiff.

Jorge Maldonado–Rios, (Soto–Del Valle), Bayamon PR, David W. Roman, (Leon–Ayala), San Juan PR, Marlene Gerdts, Beverly Hills, CA, Linda George, Hackensack, NJ, (Villarman–Oviedo) for defendant.

## OPINION AND ORDER

FUSTE, J.

Defendants, Carlos Soto–Del Valle, Joaquín Cruz–Jiménez, Federico Villarmán–Oviedo, and Teddy León–Ayala, are charged with participating in a narcotics trafficking conspiracy in violation of 21 U.S.C. § 846 (1994). Defendants Soto–Del Valle and Cruz–Jiménez are also charged with aiding and abetting the conspiracy in violation of 18 U.S.C. § 2 (1995) and 21 U.S.C. § 841(a)(1) (1994), and Defendant Cruz–Jiménez is charged with two counts of possession of firearms in violation of 18 U.S.C. §§ 922(g), (k) (1976), and 924(a)(2) (1976).

Defendants move to suppress all evidence obtained as a result of the wiretaps utilized in their case; for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine whether the government had provided a full and complete statement of the necessity of the electronic surveillance utilized pursuant to 18 U.S.C. § 2518(1)(c) (1964); for a hearing to determine whether the agents who intercepted the wiretaps followed their directive to minimize the interception of conversations which were outside the scope of the authorization order, in accordance with 18 U.S.C. § 2518(5) (1964); and for a hearing on the instant motion. The Government opposes the motion.

## I.

### Background

The Government obtained a number of wiretaps in Puerto Rico directed towards individuals, allegedly unknown to the Government and its agents, identified as Carmelo Rosado–Meléndez, a.k.a. "Chivi"; Luis González–Rodríguez; Joaquín A. Cruz–Jiménez; Carlos A. Soto–Del Valle; Alex last name unknown; Sheila Agosto–Soto; Jorge Haedo–Otado; Jose Pabón–Benítez; Teddy last name unknown; first and last name unknown, a.k.a. "Buster"; first and last name unknown, a.k.a. "Ricky"; first and last name unknown, a.k.a. "Charlie"; first and last name unknown, a.k.a. "Gongo"; first and last name unknown, a.k.a. "Quique"; and other unknown subjects who either called to or from the cellular telephone bearing the number (787) 378–0435, Electronic Serial Number ("ESN") 22416338398. The telephone was subscribed to Angel Bruno–García, of GK–35, Avenida Campo Rico, Carolina, Puerto Rico.

Probable cause for the initial wiretaps in Puerto Rico was based on information contained in affidavits from Government prosecutors and Drug Enforcement Administration ("DEA") agents. The basis of information for the initial wiretaps was the result of a wiretap in Brooklyn, New York, that intercepted telephone calls to two cellular telephones in Puerto Rico.[1] On May 1, 1998, a district judge authorized interception of oral communication of those numbers from May 5 until May 19, 1998. Subsequently, on June 17, 1998, the judge authorized the continued interception of communication from these telephones from June 17 until July 16, 1998.[2]

Next, based upon affidavits by Government agents, the judge, on July 29, 1998, issued an order for the interception of communication from cellular telephone number (787) 378–0435 for a thirty-day period. Finally, on August 27, 1998, the judge issued a fourth order authorizing interception of incoming and outgoing calls from cellular telephone number (787) 642–1459, subscribed under the name of Jaime Marcano–Algarín.

The affidavits upon which the judge based his decisions to issue the wiretap authorizations indicated that the Government expected to confirm the specifics of the drug trafficking and money laundering offenses, including: (1) the identities and roles of accomplices, aiders and abettors, co-conspirators, and participants; (2) the locations and sources of resources used to finance the illegal activities; and (3) the locations and items used in furtherance of the illegal activities. Furthermore, the affidavits alleged that normal investigative procedures used in similar cases "have been tried and have failed, or they appear unlikely to succeed if they are tried, or are too dangerous to employ."

Defendants maintain that there is no showing of necessity in the affidavits submitted for either the May 1, 1998, or July 29, 1998 wiretaps. They assert that both affidavits lack the factual details necessary to meet the requirements of 18 U.S.C. § 2518(3)(c) (1964), and merely recite conclusory beliefs of the agents, even though Defendants allege that DEA agents had identified most of the key participants in and infiltrated the conspiracy prior to issuance of these warrants. Additionally, they maintain that no investigation was conducted in Puerto Rico prior to the submission of the May 1, 1998 affidavit. The Government opposes Defendants' motion.

## II.

### Analysis

Defendants allege and the Government concedes that Defendants Carlos Soto–Del

---

1. The cellular phone numbers were (787) 409–8841, ESN 22416310055; and (787) 360–5700, ESN 22416338398.

2. The second order authorized interception of incoming and outgoing calls from the number (787) 360–3109, which was the previous number assigned to the telephone with ESN 22416310055.

Valle, Joaquín Cruz–Jiménez, Federico Villarmán–Oviedo, and Teddy León–Ayala have standing to move to suppress the electronic interceptions, and all derivative evidence. Thus, we move to the issues of the sufficiency of the affidavits and the alleged falsehoods by the federal agents in this case.

## A.

Chapter 119 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 sets the standards and procedure for interception of wiretaps and electronic communications. *See* 18 U.S.C. §§ 2501–21 (1982 & 1986 Amendments). Included in the statutory requirements is a showing that other investigative means are inadequate or will not suffice. *See* 18 U.S.C. §§ 2518(1)(c) and (3)(c). Section 2518(1)(c) is directed at the applicant and requires that a wiretap application include: "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Section 2518(3)(c) is the judicial counterpart to section 2518(c), and mandates that the issuing judge make a determination, based upon the facts supplied by the applicant, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); *see United States v. Kahn*, 415 U.S. 143, 153, n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). In other words, the government is charged with "mak[ing] a reasonable good faith effort to run the gamut of normal investigative procedure before resorting to means so intrusive as electronic surveillance of telephone calls," *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir.1989) (quoting *United States v. Hoffman*, 832 F.2d 1299, 1306–07 (1st Cir.1987)), and the judge must then "independently conclude based upon the affidavit, that the antecedent efforts were adequate in order to com-

ply with section 2518(3)(c)." *Id.* (citing *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir.1977)).

Under this scheme, the Government is not charged with proving that other methods would be completely fruitless, *see United States v. Abou–Saada,* 785 F.2d 1, 11 (1st Cir.1986), or undertake exceptional risks or exhaust every possible alternative prior to seeking wiretap authorization. *See Hoffman,* 832 F.2d at 1306. Nonetheless, naked conclusory statements which are rooted solely in the affiant's prior experience are not sufficient under section 2518(1)(c). *See Ashley,* 876 F.2d at 1072 (citing *Hoffman* ). However, issuing courts may rely upon affidavits that are based, at least in part, upon the experience of trained agents, *see Ashley,* 876 F.2d at 1072 (citing *United States v. Landmesser,* 553 F.2d 17, 20 (6th Cir.1977); *United States v. Rodriguez,* 606 F.Supp. 1363, 1368 (D.Mass.1985)), and the nature of the alleged misconduct, in determining whether the predicate acts of the agents were sufficient. *See Ashley,* 876 F.2d at 1072–73 (citing *Scibelli,* 549 F.2d at 227). What is required is that the government affidavit show a " 'reasonable likelihood' that alternative techniques would fail to expose the crime." *Id.* at 273 (citing *Abou–Saada,* 785 F.2d at 12).

Defendants allege that the Government used investigatory techniques in New York, but conducted absolutely no investigation in Puerto Rico. They contend that the affidavits were completely based upon investigative work done in New York and demonstrate an unlawful attempt to bootstrap upon that work to obtain the Puerto Rico wiretap authorizations. The Government, on the other hand, contends that it had identified the main targets of the investigation, Defendants Cruz–Jiménez and Soto–Del Valle, but not the other co-conspirators. Given that it had no confidential sources which had infiltrated the conspiracy, the Government maintains that the wiretaps were necessary. Owing to the secretive nature of narcotics conspiracies, the Government asserts that no

outward actions, such as grand jury subpoenas or consensual searches, could be pursued without consequently alerting the conspirators to the investigation.

Nonetheless, some investigation did occur in Puerto Rico. A separate electronic surveillance was authorized by a New York court and resulted in traced calls to and from three telephones owned by Defendant Soto–Del Valle; a suspected co-conspirator, Edwin De León, was under physical surveillance during a trip to the island; and agents conducted limited surveillance in the vicinity of the homes of both Defendants Soto–Del Valle and Cruz–Jiménez.

■ Given the circumstances present in this case, we find that the Government and court complied with the requirements of sections 2518(1)(c) and (3)(c). The affidavits in support of the electronic interception demonstrate that routine investigatory techniques were likely to fail because of the nature of the conspiracy, see *Ashley,* 876 F.2d at 1072–73, and the fact that surveillance had been attempted by trained agents, but proved to be ineffective in uncovering the criminal ring, indicates that wiretaps were necessary. Moreover, there were no confidential informants from whom to glean vital information. Each application was reviewed, first by the Government and then by the district judge, and we find the authorizations were reasonable in all manners.

Next, Defendants allege that the agents assigned to their case perjured themselves and misrepresented facts before both the Municipal and Commonwealth District Courts. Defendants' allegations are premised upon an affidavit of a Carolina Municipal Judge in which she avers that the agents in this case falsely represented information before her, including the existence of a confidential informant, and failed to inform the Municipal Court of a wiretap that was occurring at the time authorization for a search warrant was being sought. The Government retorts that the situation involving the informant was simply a misunderstanding in which the agents represented that they had relied upon a "confidencia" (confidence) to obtain the information which the Municipal Court took to mean an informant. Additionally, the Government contends that the ongoing wiretap was not revealed to the Municipal Court because of a gag order issued by the district court to keep the electronic surveillance information confidential.

We do not find any deliberate falsity or misrepresentation by the agents or the Government. All of the documentation submitted indicates that there were no confidential informants used in the investigation. We find that a misunderstanding arose between the agents and the Municipal Court and that the concealment, because of a gag order, of the ongoing wiretap only served to exacerbate an already acidic situation between local and federal authorities. Nonetheless, we find no illegality in this unfortunate scenario. Furthermore, the gag order on the ongoing wiretap prevented the agents from revealing its existence, which is hardly a situation of deliberate misrepresentation.

**B.**

■ Defendants next seek a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the Supreme Court found that defendants were entitled to an opportunity to contest the truthfulness of averments in affidavits supporting search warrants. *See Id.* However, to earn the entitlement, defendants must make "a substantial showing that: (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth, and (2) the falsehood was necessary to the finding of probable cause." *United States v. Charles,* 213 F.3d 10, 13 (1st Cir.2000). Additionally, "evidentiary hearings on motions in criminal cases are the exception, not the rule." *United States v. Alicea,* 205 F.3d 480, 487 (1st Cir.2000). In other

words, the substantial showing required is not a mere formality.

■ Defendants essentially premise their arguments for a *Franks* hearing upon the aforementioned informant and concealed wiretap. As we do not find any intentional misrepresentation of falsehoods, we find that Defendants have not made the requisite showing for an evidentiary hearing pursuant to *Franks*.

## C.

■ Defendants' last contention is that the electronic surveillance in this case was not conducted in a way to minimize the interception of innocent communications. Section 2518(5) of Title 18 mandates that wiretaps and electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. § 2518(5). The law does not require perfection, but rather "honest effort" on the part of the government in conducting wiretaps. *See United States v. Uribe*, 890 F.2d 554, 557–58 (1st Cir.1989) (citing *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). The minimization procedure followed in the present case was explicitly described in the affidavit of Special Agent Cole. We find the methods outlined in the affidavit to be sufficient and assume that they were followed in the present electronic interceptions. We come to this conclusion primarily because Defendants have failed to offer any proof of outrageous or systematically inappropriate or illegal behavior during the electronic surveillance at issue. Therefore, we deny Defendants' motion for a hearing on this issue.

## III.

### *Conclusion*

In accordance with the foregoing, we **DENY** Defendants' motion to suppress evidence. This Opinion and Order disposes of *Docket Documents Nos. 320, 402, and 421*.

**IT IS SO ORDERED.**