UNITED STATES of America,

v.

Manuel VELAZQUEZ–FELICIANO
and Reynaldo Velazquez–
Aviles, Defendants.

No. Crim. 99–020(HL).

United States District Court,
D. Puerto Rico.

July 5, 2000.

Rafael F. Castro–Lang, San Juan, PR, Linda George, Hackensack, NJ, for Manuel Velazquez–Feliciano, aka El Viejo, defendant.

Mark Irish, U.S. Atty., for U.S.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a motion by Defendants Manuel Velazquez–Feliciano and Reynaldo Velazquez–Aviles to suppress wiretap evidence, Dkt. No. 219, and the Government's opposition, Dkt. No. 246. Defendants claim that the wiretaps at issue were obtained in violation of the strictures of Title III, 18 U.S.C. §§ 2510 – 2522. Specifically, they argue that in its November 16, 1998 and January 4, 1999 applications for the initial and continuing wiretap of the cellular telephone registered in the name of Jose Ramos Rivera, the Government failed to establish that it tried normal investigative techniques and that these techniques were unsuccessful. Defendants also allege that the applications included affidavits containing materi-

al factual misstatements and omissions. Defendants further argue that the Government failed to take proper measures to minimize the interception of innocent conversations. Accordingly, Defendants assert, the wiretap orders were issued in violation of 18 U.S.C. § 2518(1)(c) and § 2518(5).

The wiretaps were originally authorized by Judge Dominguez in a sealed miscellaneous case. See Misc. No. 98–152. In issuing his order on November 16, 1998, Judge Dominguez relied on an affidavit by FBI Special Agent Michael F. Plichta ("SA Plichta"), which detailed the extent of the Government's investigation and information on the alleged offenses. Later, on January 4, 1999, an extension of the wiretap order was authorized on the basis of a similar affidavit by FBI Special Agent Jose A. Garcia. The defendants are charged with conspiracy to possess narcotics with intent to distribute and conspiracy to conduct financial transactions with the proceeds of narcotics dealings.

### 1. Government's Showing of Attempt at Normal Investigative Techniques and Lack of Success

Defendants contend that the Government failed to show in its application for a wiretap order its need for such an order. They further argue that the Government's use of an affidavit containing "boilerplate" language was inappropriate. Before moving on to the Government's showing of necessity, the Court can quickly put aside Defendants' boilerplate-language argument. As the Government's opposition points out, applications for wiretaps are generally sought by the Government precisely when other means fail. These means are usually quite similar, if not identical. Further, affidavits in applications normally closely track the language of the statute because of the statute's specific and strict requirements. Although the use of un-original language in his affidavit does not constitute a wrong, the Court takes pains to point out that SA

Plichta's affidavit indeed recited numerous facts specific to this investigation in justifying the Government's request for a wiretap order.

Title III requires that the Government's application for a wiretap order include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This statement should establish that the government first made a reasonable good faith effort to utilize all the available other normal investigative techniques before seeking to use the intrusive tool of electronic interception of telephone calls. *United States v. London*, 66 F.3d 1227, 1237 (1st Cir.1995). A court weighing the relative intrusiveness of different investigatory techniques should do so with a practical commonsense approach. *United States v. David*, 940 F.2d 722, 728 (1st Cir.1991); *United States v. Uribe*, 890 F.2d 554, 556 (1st Cir.1989). In making this determination, the nature of the offense is an important factor. *Uribe*, 890 F.2d at 556. Drug trafficking is, by nature, "hard to pin down." *Id.* It is difficult to detect and presents formidable obstacles to identifying participants and defining their roles. Accordingly, law enforcement personnel should be afforded latitude in choosing the manner in which they investigate it. *David*, 940 F.2d at 728. Additionally, a court may consider a law enforcement agent's affirmations based upon his experience in the area investigated. *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir.1989).

Title III was not intended to oblige the Government to run outlandish risks or even to exhaust every possible alternative before applying for wiretap authorizations. *Id.; Uribe*, 890 F.2d at 556–57; *United States v. Hoffman*, 832 F.2d 1299, 1306 (1st Cir.1987). Furthermore, the Government is not required to demonstrate that its other less intrusive investigative methods have been wholly fruitless.

*Ashley,* 876 F.2d at 1072; *United States v. Abou–Saada,* 785 F.2d 1, 11 (1st Cir.1986); *United States v. Montalvo,* 882 F.Supp. 230, 232 (D.P.R.1995). A court deciding whether to authorize a wiretap must be satisfied that the Government used normal investigative methods, but confronted obstacles in gathering evidence on the criminal enterprise to the extent that wiretapping had become a reasonable option. *Ashley,* 876 F.2d at 1072; *Abou–Saada,* 785 F.2d at 11. The Government's application need not prove unequivocally that without electronic surveillance the investigation will fail. Rather, the application should establish that the Government has unsuccessfully employed less intrusive means of investigation and that a wiretap "seems a suitable next step in a plausible progression." *David,* 940 F.2d at 729. An affidavit in support of the application will be sufficient if it meets the burden of showing a reasonable likelihood that alternative means of investigation would fail to expose the offenses. *Ashley,* 876 F.2d at 1073; *Abou–Saada,* 785 F.2d at 12.

Before the Court proceeds to analyze the Government's affidavit and application in the present case, it is necessary to clarify what standard should be used in making this analysis. For purposes of Defendants' motion to suppress, the Court is sitting, in effect, as an appellate court reviewing the issuing judge's decision to issue an order authorizing the wiretaps.

A district court considering a motion to suppress a wiretap in such a situation must take as true the facts stated in the affidavit. *Ashley,* 876 F.2d at 1073–74. The court must determine the affidavit's sufficiency on its face. *Id.* at 1074. The affidavit will be sufficient if the court issuing the order authorizing the wiretaps "could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed." *Id.* Thus, if an examination of the affidavit on its face indicates that the issuing court could have reasonably so concluded, the motion to suppress must be denied. *Id.*

In the present case, the Government's affidavit easily meets this standard. The Government was not required to demonstrate that its less intrusive investigative methods were completely fruitless. *See Ashley,* 876 F.2d at 1072; *Abou–Saada,* 785 F.2d at 11. Rather, the Government had to show that less intrusive means were reasonably likely to fail and that a wiretap was the next plausible step in the investigation's progression. *See David,* 940 F.2d at 729; *Ashley,* 876 F.2d at 1073; *Abou–Saada,* 785 F.2d at 12. In his affidavit, SA Plichta offered explanations as to why less intrusive means of investigations were not likely to bear fruit. SA Plichta explained that physical surveillance is of limited use because it leaves agents to guess at the purpose of targets' attendance at meetings and because it is detectable. In fact, the affidavit states that "El Viejo" had already detected FBI vehicles following him. The affidavit further explains that consensual recording of telephone calls was limited by the fact that much of the suspected drug activity being carried on by the organization was not discussed in telephone calls involving the FBI's confidential informants. In addition, because of the marginal roles of the confidential informants, the details of the major drug transactions were unlikely to be revealed to them. SA Plichta further explained in his affidavit that undercover agents were not introduced into the target organization because of the FBI's belief that the organization is extraordinarily violent. Finally, search warrants would be unlikely to allow the FBI to identify and capture more than a few participants in the organization, as a search would alert the organization's other members.

According to SA Plichta, the target organization used telephones as their primary method of communication. Further, the methods employed by the FBI to date had not yielded the identities of the vast majority of the members of the organization, a situation that SA Plichta's experience led him to believe could be remedied

by a wiretap. It was proper for the issuing court to consider SA Plichta's affirmations based on his experience in drug investigations. *See Ashley*, 876 F.2d at 1072. Additionally, the issuing court was justified in affording the investigators latitude in choosing how best to continue the investigation. *See David*, 940 F.2d at 728.

It belabors the obvious to state that the investigation of drug conspiracies is dangerous work. The Government in this case did not have to take unnecessary risks in its investigation and exhaust all other less intrusive investigation techniques before seeking a wiretap. *See Ashley*, 876 F.2d at 1072; *Uribe*, 890 F.2d at 556–57; *Hoffman*, 832 F.2d at 1306. Its application contained an affidavit which properly detailed the status of the investigation. The affidavit also explains why other means of investigation would be insufficient for the investigation to progress. On its face, the affidavit was sufficient to enable the issuing court to conclude that less intrusive investigative techniques were unlikely to succeed, *see Ashley*, 876 F.2d at 1074, and that a wiretap would be the next plausible step in the progression of the investigation, *see David*, 940 F.2d at 729.

### 2. *Alleged Material Factual Misstatements and Omissions in Affidavits*

 In their motion, Defendants allege that the affidavits in support of the applications suffer from a number of factual misrepresentations and omissions. De-

fendants point out these factual deficiencies in the course of requesting that the Court convene a *"Franks* hearing." A *Franks* hearing serves to determine whether an affidavit contains a material false statement or omission made knowingly and intentionally or with reckless disregard for the truth. See *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Cole*, 807 F.2d 262, 267–68 (1st Cir.1986). For a defendant to move successfully for a *Franks* hearing, he must make non-conclusory assertions that are properly supported by the evidence. *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. Further, he must show that the allegedly false statements or omissions are material.[1] *Id.* at 171–72, 98 S.Ct. 2674; *United States v. Charles*, 213 F.3d 10, 23–24 (1st Cir.2000); *Cole*, 807 F.2d at 267–68.

In the instant case, Defendants first allege that SA Plichta misled Judge Dominguez when he claimed in his affidavit that the investigation of this case began on July 24, 1998. In reality, Defendants argue, the investigation did not begin in earnest until October 21, 1998. Both sides agree that one of the FBI's cooperating witnesses first made contact with "El Viejo" on July 24, 1998. Although the Government does not contest that the investigation otherwise lay dormant until October 21, 1998, the Government stands by its assertion that the investigation indeed began on July 24, 1998. The Court agrees. Although the investigation languished

---

1. The Supreme Court put it this way: "There is, of course, a presumption of validity with respect to the affidavit supporting the [warrant or order]. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the ... affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the ... affidavit to support [the issuance of the warrant or order], no hearing is required."

through a period of dormancy, the Court can not conclude that the start date in SA Plichta's affidavit is a falsity.

Defendants next assert that in SA Plichta's affidavit, he incorrectly stated that the FBI had not been able to identify the suspect known as "El Viejo." As evidence of SA Plichta's inaccuracy, Defendants point out that another part of SA Plichta's affidavit states that on October 24, 1998, "El Viejo" was identified as Manuel Velazquez Feliciano. It is Defendants' assessment of SA Plichta's affidavit, however, that is inaccurate. In his affidavit, SA Plichta states that on October 24, 1998, "El Viejo" was seen driving a vehicle registered to Manuel Velazquez Feliciano. The affidavit goes on to state, though, that the FBI does not believe that Manuel Velazquez Feliciano is the person known as "El Viejo." Thus, SA Plichta's affidavit clearly shows that the FBI was not yet aware of "El Viejo's" identity, as the later indictment charges that Defendant Manuel Velazquez Feliciano was indeed known as "El Viejo."

The third asserted falsity that Defendants point to is SA Plichta's assertion in his affidavit that surveillance had not been helpful to the FBI. According to Defendants, the FBI's surveillance was "limited" and had been "very fruitful." Defendants have failed, however, to identify a factual inaccuracy on this point. SA Plichta's affidavit acknowledges that physical surveillance "has proven valuable in identifying some of the targets' activities and associates" but is of limited use in discovering the roles of conspirators or sources of supply and is vulnerable to detection by counter-surveillance. SA Plichta's measured praise for physical surveillance is by no means a factual misstatement.

Fourth, Defendants argue that SA Plichta's affidavit omits information on how useful the FBI's informants have been in the FBI's investigation of the conspiracy. The Defendants' pointing out of specific instances of the FBI's use of informants, however, is not evidence of SA Plichta's having omitted relevant facts from his affidavit. SA Plichta's affidavit acknowledges the FBI's successful use of informants, but it asserts that the informants have not penetrated the criminal organization to a depth sufficient to allow the FBI to prosecute fully all members of the organization. Again, Defendants have failed to bring to light any misstatements or omissions relevant to the *Franks* inquiry.

 Fifth and finally, Defendants assert that the January 4, 1999 affidavit of SA Garcia contains the identical misstatements and omissions as SA Plichta's affidavit. A careful review of SA Garcia's affidavit, however, reveals that Defendant's assertions with regard to SA Garcia's affidavit fail for the same reasons as their assertions with regard to SA Plichta's affidavit. Defendants having failed to point to any false statements or omissions, their request for a *Franks* hearing is denied.

### 3. Minimization

In their motion to suppress, Defendants argue that the FBI failed "to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). The Supreme Court has given the lower courts guidance on the interpretation of this provision, and the First Circuit has refined the inquiry further. See *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *London*, 66 F.3d 1227; *Uribe*, 890 F.2d 554; *Hoffman*, 832 F.2d 1299.

 The law does not require perfection, but rather "honest effort" on the part of the government in conducting wiretaps. See *Uribe*, 890 F.2d 554, 557–58 (1st Cir.1989) (citing Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). The minimization procedure followed in the present case was described in detail in SA Plichta's affidavit. Further, "[w]e find the methods outlined in the affidavit to be sufficient and assume that they were followed in the present electron-

ic interceptions. We come to this conclusion primarily because Defendants have failed to offer any proof of outrageous or systematically inappropriate or illegal behavior during the electronic surveillance at issue." *United States v. Soto–Del Valle,* 102 F.Supp.2d 57, 61 (D.P.R.2000). Defendants set forth one example of an intercepted call that allegedly should not have been intercepted. In its opposition, the Government adequately explains why the call was relevant to the investigation. Thus, Defendants' motion to suppress is denied.

WHEREFORE, Defendants' motion to suppress on the grounds of the Government's failure to demonstrate its need for a wiretap is hereby denied. Further, Defendants' request for a *Franks* hearing is hereby denied. Finally, Defendants' motion to suppress on the grounds of the Government's failure to minimize its interception of innocent telephone calls is hereby denied.

**IT IS SO ORDERED.**